UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| YANCY GUERIN | § | CIVIL ACTION NO: |
| | § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | |
| WINNEBAGO INDUSTRIES, INC. | § | |
| | § | |
| *Defendant* | § | JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1. Plaintiff, YANCY GUERIN, is an individual that is now and has been at all times a citizen of state of Louisiana.

2. Defendant, WINNEBAGO INDUSTRIES, INC., hereinafter "WINNEBAGO," is a citizen of Indiana and an Indiana corporation authorized to do and doing business in the state of Indiana with its principal place of business located in the state of Indiana and is a warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

WINNEBAGO's agent for service of process is CT Corporation System, 334 Senate Avenue, Indianapolis, IN, 46204.

### II. Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

6. On September 28, 2022, Plaintiff purchased a new 2022 WINNEBAGO MI2201MB bearing VIN: 54CTM1P2XN6062959, hereinafter "MINNIE," from BERRYLAND MOTORS, L.L.C.. The "MINNIE" was purchased primarily for Plaintiff's personal use.

7. The sales price of the MINNIE was $38,140.85. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

#### B. Implied Warranties

8. As a result of the sale of the MINNIE by Defendant to Plaintiff, an implied warranty

-2-

of merchantability arose in the transaction which included the guarantee that the MINNIE would pass without objection in the trade under the contract description; and that the MINNIE was fit for the ordinary purpose for which such motor vehicles are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.     Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the MINNIE, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the MINNIE had, in fact, repaired the defects.

11. Plaintiff's purchase of the MINNIE was accompanied by express warranties offered by the Defendant, WINNEBAGO, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the MINNIE.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the WINNEBAGO's warranty booklet and owners manual.

### D.     Actionable Conduct

13. In fact, when delivered, the MINNIE was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have

occurred since purchase, including, but not limited to the following:

> "A. WATER DAMAGE STRUCTURAL DEFECTS, NON-CONFORMITIES AND CONDITIONS WHEREIN THE RV HAS BEEN OUT OF SERVICE SINCE MAY 18, 2022 AND IS STILL UNREPAIRED.
>
> B. ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS."

14. Since purchase, Plaintiff has returned her MINNIE to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the MINNIE, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the MINNIE, continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects experienced by Plaintiff with the MINNIE substantially impaired its use, value and safety.

16. Plaintiff notified the Defendant of the defective conditions in the MINNIE.

### VI. Causes of Action

**COUNT 1:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

17. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

19. Defendant is a "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C.

-4-

§ 2310(4) and (5).

20. The MINNIE is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

21. The express warranties more fully described hereinabove pertaining to the MINNIE is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

22. The actions of Defendant in failing to tender the MINNIE to Plaintiff free of defects and refusing to repair or replace the defective MINNIE tendered to Plaintiffs constitute a breach of the written and implied warranties covering the MINNIE and hence a violation of the Magnuson-Moss Warranty Act.

23. Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

24. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $100,000.00 according to proof at trial.

25. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 2:    BREACH OF EXPRESS WARRANTIES

26. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

27. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's MINNIE or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the MINNIE and warranted that the MINNIE was free of defects in materials and work quality at the time of delivery.

28. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiff a MINNIE that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

29. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

30. The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 3:    BREACH OF IMPLIED WARRANTIES

31. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32. The Defendant impliedly warranted that Plaintiff's MINNIE which it designed, manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

33. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the MINNIE had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiff.

34. Because of the defects, Plaintiff's MINNIE is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendant breached the implied warranty of merchantability.

35. The damages Plaintiff has suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII. Economic and Actual Damages

36. Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

   b. Benefit of the Bargain Rule. The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

   c. Costs of Repairs.

   d. Loss Profits.

   e. Loss of Use.

   f. Diminished or reduced market value.

  g. Damages for Mental Anguish.

## VIII. Attorney Fees and Costs

37. Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX. Prayer

38. For these reasons, Plaintiff prays for judgment against the Defendant for the following:

  a. For general, special and actual damages according to proof at trial;

  b. For incidental and consequential damages according to proof at trial;

  c. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

  d. Any diminution in value of the MINNIE attributable to the defects;

  e. Past and future economic losses;

  f. Prejudgment and post-judgment interest;

  g. Damages for loss of use of vehicle;

  h. Civil Penalties and/or Punitive damages;

  i. Damages for mental anguish;

  j. Attorney fees;

  k. Costs of suit, expert fees and litigation expenses; and

-8-

    l.    All other relief this Honorable Court deems appropriate.

## X.    Demand for Jury Trial

39.    Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF